IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ALABAMA, MIDDLE SOUTHERN DIVISION.

GARY HORNE, # 180206,

   Petitioner,

   Vs.                   CASE NO. CV.: 1·06CU968 - W
                                        K

GWENDOLYN MOSLEY,

et. al.,

   Respondnets.

BRIEF AND ARGUMENT SUPPORTING FEDERAL
HABEAS CORPUS PURSUANT TO 28 U.S.C. 2254

   Comes now, the petitioner Gary Horne, by and through himself in
the above entitled cause and moves this Court pursuant to 28 U.S.C.
2254 to grant petitioner's habeas corpus based upon the following:

   Whether the State's violation of BRADY Vs. MARYLAND, 373 U.S. 83,
83 S. Ct. 1194, 10 L. Ed. 2d. 215 (1963) made petitioner's Criminal
Trial fundamentally unfair?

ANSWER: YES

FACTS IN SUPPORT

   The petitioner was arrested on January 16, 2004 for Attempted
Murder, with a hand gun of John Williams in Dale County, Alabama.
Horne filed a request for discovery and a demand for preliminary
Hearing on March 29, 2004. Horne filed a Motion to Compel Pro-
duction of Discovery on May 14, 2004. Partial discovery was subse-
quently provided to Horne, which included an "Investigation Report"
prepared by Lt. Rev Tipton of the Wiregrass Violent Crime/Drug Task
Force.

   A Motion to Dismiss was filed by Horne on September 3, 2004,
without objection by the State. A Hearing was conducted on December

16, 2004, and the Trial Court denied Horne's Motion to Dismiss without opinion.

## CONSTITUTIONAL PROVISIONS

The petitioners conviction is violative of the Fourteenth Amendment to the United States Constitution:

"Nor shall and State deprive any person of Life, Libery, or Property, without Due Process of Law."

## REASONS WHICH WRIT SHOULD BE GRANTED

The **MAIN** issue raised in this petition involves the failure of the State of Alabama to provide potentially exculpatory evidence to the petitioner. It is the  contention that the alleged victim in this case, John Williams, actually had control of the weapon with which he was shot, and was in fact shot when petitioner struggle with him after Williams threatened petitioner with the handgun.

Facts in the case demonstrate that officer Keith  prepared the Alabama Uniform Incident Report which states on the first page thereof that the weapon used in the shooting was a 40 cal. handgun. At the hearing on petitioner's Motion to Dismiss, testimony of John Williams Dassinger showed he purchased a "Glock-40" from the alleged victim after the shooting, and further that he had been trying to purchase it for some time when the alleged victim suddenly contacted him and offered it to him for one hundred dodlars.

Dassinger also testified that the gun was seized by Ozark Police later in 2004. Also revealed at the hearing was the fact that Lt. Tipton retrieved what he believed to be a 40 caliber projectile from the scene, and marked it as evidence in this case, but did not know where it was at this time.

Upon learning of the existence of the projectile, counsel for petitioner filed a "Motion To Preserve Evidence" in April 27, 2004. However, the State claimed they loss the gun, bullet and photo-graphs, the materiality of the gun and the projectile as exculpatory evidence can never be adequately assessed; Whereas, the petitioner's claim of self-defense could have been bolstered

immeasurably, and in all likelyhood bolstered to the point of acquittal.

Several decades ago the case of BERGER Vs. UNITED STATES, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314, (1935), laid the foundation to the disclosure of evidence by the prosecution. It stated in part:

> "The United States attorney is the
> representative not of an ordinary party
> to a controversy, but of a sovereignty
> whose obligation to govern impartially is
> as compelling as its obligation to govern
> at all; And whose interest, therefore, in
> a criminal prosecution is not that it shall
> win a case, but that Justice shall be done.
> As such, he is in a peculiar and very definite
> sense the servant of the law, the twofold
> aim of which is that guilt shall not escape
> or innocence suffer. He may prosecute with
> earnestness and vigor-indeed, he should do
> so. But, while he may strike hard blows, he
> is not at liberty to strike foul ones.
> It is as much his duty to refrain from
> improper methods calculated to produce
> a wrongful conviction as it is to use
> every legimate means to bring about a just one."

This observation marked the beginning of a line of cases that evidentually developed into a constitutional duty upon the part of the prosecutor to disclose to the accused evidence in the government's possession that is material to the accused. This obligation is grounded on due process rather than on any specific language found in the Constitution. The disclosure evolved from cases in which the prosecutor had either knowingly used false testimony, See MOONEY Vs. HELOHAN, 294 U.S. 103, 55 S. Ct. 340, 79 L. Ed. 791 (1935), or had allowed false testimony to go uncorrected ALCORTA Vs. TEXAS, 355 U.S. 28, 78 S. Ct. 103, 2 L. Ed. 2d. 9, (1957).

BRADY Vs. MARYLAND, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215
(1963), was a major turning point. The Supreme Court announced what
has become known as the BRADY doctrine. The Court stated:

>"The suppression by the prosecution of
>evidence favorable to an accused upon
>request violates due process where the
>evidence is material either to guilt or
>to punishment, irrespective of the good
>faith or bad faith of the prosecution."

>✱"The principle..is not punishment of society
>for misdeeds of the prosecutor but
>avoidance of an unfair trial to the
>accused...A prosecution that withholds
>evidence on demand of an accused which,
>if made available, would tend to
>exculpate him or reduce the penalty helps
>shape..a proceeding that does not
>comport with standards of justice,
>even though, as in the present case,
>his action is not "The result of guile..."
>id. at 87-88, S. Ct. 1196-1197.

The duty established in BRADY does not depend upon proof that the
prosecutor acted in bad faith in withholding the requested
information. The BRADY rule is premised on recongnition that when
the government withholds significant evidence favorable to the
accused, the integrity of the verdicts is compromised.

IN GIGLIO Vs. UNITED STATES, 405 U.S. 150, 92 S. Ct. 783, 31 L.
Ed. 2d. 104 (1972). The Court stated:

>"Whether the nonfisclosure was a result
>of negligence or design, it is the
>responsibility of the prosecutor. The

prosecutor's office is an enitity and
as such it is the spokeman for the
government. A promise made by one
attorney must be attributed, for these
purpose, to the government...To the
extent this places a burden on the
large prosecution offices, <u>procedures
and regulations</u> can be established to
carry that burden and to insure
communication of all relevant
information on each case to every
lawyer who deals with it." id at
154, 92 S. Ct. at 77 (Citation ommited).

If the police have exculpatory information with unmistakable
importance for the defense, the police should not wait for the
prosecutor to request the information. And turn it over to the
prosecutor. In <u>BARBEE Vs. WARDEN</u>, 331 F. 2d. 842 (1964), The
prosecutor introduced the defendant's revolver into evidence
without informing the defense that ballistics and fingerprint
tests performed on the revovler had been negative. The reason
the prosecutor failed to infrom the defense was that the
prosecutor was unaware that this infromation existed. The
Fourth Circuit reversed the defendant's conviction on the
grounds that the prosecutor was responsible for the infor-
mation in the hands of the police department, even though the
prosecutor was unaware that the information existed.

The <u>BRADY</u> doctine covers evidence that is favorable to the
accused and material as to guilt or punishment. <u>UNITED STATES
Vs. BAGLEY</u>, 473 U.S. 667, 105 S. Ct. 3375, 8 L. Ed. 2d. 481,
(1985). Favorable includes both information with exculpatory
value and information tending to discredit the testimony of
government witness, such as by showing criminal records,
promises of immunity for testimony or simolar acts. <u>PORETTO
Vs. STALDER</u>, 834 F. 2d. 461 (5th Cir. 1987); <u>NIXON Vs. UNITED
STATES</u>, 703 F. Supp. 538 (S.D. MISS. 1988), aff'd 881 F. 2d.
1305 (5th Cir. 1989).

the angle the projectile enter into the victims torso was from, an upward to downward angle. It went in at the top of his right torso and exit his lower back, more to his opposite side, right above his left buttocks. The angle goes along with my story of what happened but my lawyer didn't use this to my advantage. The victim say he seen this weapon in my waistband.... but how can you see the weapon and I had a long grey sweatshirt on and it was pitch black where we was standing. The victim then said after he seen the pistol he attempted to shoot me in the face; who punches a person with a gun? None of this make any sense because the truth is what I told them from day one- He called me to come get my sister and once I got there it didn't take long for me to figure out that he had lured me over there for revenge; for jumping in between him and my sisters fight at my house earlier. I got there he pushed me and I punched him he punched me with no effect and that's when he reached in his waist and was lifting this pistol up, so I grabbed his right hand with the gun and when he got it chest high, it went off pointing at his right side in a downward position. That's why it was easy to find the projectile for the detectives; cause it passed through him striking the concrete. There is NO WAY I could of shot him and it took that angle, no way, unless I was on a roof.

The materiality of the gun and the prejectile as exculpatory evidence can never be adequately assessed; this should logically not work to the State's advantage or benefit. The petitioner's claim of self defense could have been bolstered immetsurable, and in all likelihood bolstered to the point of acquittal.

## CONCLUSION

For the reasons indicated herein, the petitioner's Writ of Habeas Corpus is due to be granted.

Respectfully Submitted,

Gary Horne
200 Wallace Drive
Clio, Alabama 36017

# EXHIBIT 1

IN THE DISTRICT COURT OF DALE COUNTY, ALABAMA

CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF ALABAMA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.:  DC– 2004 – 213 |
| | ) | |
| WILLIAM DASSINGER, | ) | |
| Defendant. | ) | |

## MOTION TO PRESERVE EVIDENCE

**COMES NOW**, Gary Horne, by and through his attorney N. Tracy Nickson, who is the Defendant in Case No. CC-2004-1220, in the Circuit Court of Dale County, and respectfully requests that this Honorable Court will preserve certain evidence in the above styled action for inspection and/or testing by defense counsel in Mr. Horne's case; as grounds he states as follows:

1. William Dassinger currently faces charges of, *inter alia*, possession of an altered handgun in this Honorable Court.

2. Gary Horne, represented by the undersigned, currently faces a charge of Attempted Murder in Dale County Circuit Court.

3. The investigation currently being conducted by the undersigned indicates a strong possibility that the firearm at issue in Mr. Dassinger's case, a semiautomatic .40 caliber handgun, was purchased by Mr. Dassinger from the alleged victim in Mr. Horne's case shortly after the act for which Mr. Horne faces charge.

4. If indeed the handgun for which Mr. Dassinger is charged is the same used in the crime for which Mr. Horne is charged, the effect would be so exculpatory as to Mr. Horne as to

completely absolve him of the charge, and moreover would in all likelihood result in a

criminal investigation of the alleged victim in Mr. Horne's case.

5.      This request is made pursuant to the authorities expounded in ***Brady v. Maryland***, 373

U.S. 83, ***Giglio v. United States***, 405 U.S. 150,; Naque v. Illinois, 360 U.S. 264; ***United***

***States v. Tashman***, 478 FR.2d 129 (5 Cir. 1973.).

**WHEREFORE, THESE PREMISES CONSIDERED,** the undersigned respectfully requests

that this Honorable Court will preserve the above described evidence for inspection and/or testing

by counsel for the Defendant.

RESPECTFULLY submitted on this the 26ᵗʰ day of April, 2004.

N. TRACY NICKSON (NIC026)
**ATTORNEY FOR DEFENDANT**
**2181 AA COBBS FORD ROAD**
**PRATTVILLE, ALABAMA 36066**
**(334) 285-1776**


**CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the foregoing document has been served upon the

offices of the Dale County District Attorney and upon the Hon. Circuit Judge K.W. Quattlebaum

by placing same in his/her box and or by first class U.S. Mail, postage pre-paid on this the

of _____ 2004.

FILED
DALE COUNTY AL
APR 2 7 2004

OF COUNSEL

**EXHIBIT 2**

*Atty Copy*

## IN THE CIRCUIT COURT OF DALE COUNTY, ALABAMA
## CRIMINAL DIVISION

STATE OF ALABAMA,       )
      Plaintiff,          )
                        )
vs.                       )     **CASE NO.:  CC– 04–1220**
                        )
**GARY HORNE,**          )
      **Defendant.**       )

### MOTION TO DISMISS

**Comes now,** the Defendant in the above-styled action, and respectfully requests that this Honorable Court will enter an Order Dismissing said action; as grounds he avers as follows:

1.    The Defendant is charged with Attempted Murder, and is scheduled for trial on 14 September 2004.

2.    There is evidence in the case once held by the State but which now is unable to be located, to wit: one bullet of unknown caliber found at the scene of the alleged crime and retrieved by Lt. Rex Tipton, the previous case agent, and photographs of the scene taken by evidence technicians.

3.    This bullet is crucial to the defense of this action; reference is hereby made to Defendant's "Motion to Preserve Evidence," filed with both the District Court and this Honorable Court on or about 27 April 2004; this Motion details the necessity for the bullet. Briefly, the bullet is strongly believed to have been fired from the same .40 caliber weapon which the alleged victim in the instant case sold to another person, now incarcerated, approximately two weeks after the alleged Attempted Murder.

4.  This weapon is being held as evidence in another case arising in Dale County, *State v. Dassinger, DC-2004-213,* making matching of the bullet to the weapon readily possible were the bullet available.

5.  Were the bullet to match the weapon sold to Dassinger by John Williams, the alleged victim in the instant case, it would prove the Defendant's theory of self-defense, which contends that Williams always had the weapon, assaulted the Defendant with it, and in the ensuing struggle was himself shot with his own gun.

6.  Following the Defendant's Motion to Compel Discovery, filed with this Honorable Court on 14 May 2004, which was granted, the Defendant was allowed to inspect the evidence collected at the scene, which included, *inter alia,* a .40 caliber shell casing.

7.  Lt. Rex Tipton was certain that a bullet was collected at the scene, a fact which he stated clearly to the undersigned counsel, counsel's legal assistant, and to Officer Chris Ford, the present case agent, on numerous occasions.

8.  Moreover, the Narrative Summary prepared by Lt. Tipton clearly refer to photographs of the crime scene; these are also now unavailable.

9.  The case against the Defendant is due to be dismissed. Failure by the State to provide exculpatory evidence, whether willful or, as in this case, inadvertent forecloses a verdict against the Defendant in any case. *Wilson v. State,* WL 1020014, ___ So. 2d ____ (Ala. 2003): *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

10. The law enforcement agents involved in the case concede that the bullet is in all likelihood irretrievably lost, and indeed all have expressed no interest whatsoever in pursuing the case.

10.   Because it would be legally and constitutionally impossible to maintain a potential

finding of guilt, the action should be Dismissed.

**Wherefore**, these premises considered, the Defendant respectfully requests that this

Honorable Court will enter an Order Dismissing the action, or, in the alternative, will

schedule a hearing prior to the scheduled trial at which the issues raised herein may be

heard and recorded.

**Respectfully submitted this the 2nd day of September, 2004.**

**N. TRACY NICKSON (NIC026)**
**ATTORNEY FOR DEFENDANT**
**2181 AA COBBS FORD ROAD**
**PRATTVILLE, ALABAMA 36066**
**(334) 285-1776**

FILED
DALE COUNTY, AL

SEP - 3 2004

MARY BLUDSWORTH
CIRCUIT CLERK

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing document has been served upon the

offices of the Dale County District Attorney by placing same in his/her box and or by first class

U.S. Mail, postage pre-paid on this the 2nd of September, 2004.

OF COUNSEL

# EXHIBIT 3

IN THE CIRCUIT COURT OF DALE COUNTY, ALABAMA

CRIMINAL DIVISION

STATE OF ALABAMA,                    )
    Plaintiff,                        )
                         )
vs.                                  )    CASE NO.:  CC– 04–1220
                         )
GARY HORNE,                          )
    Defendant.                        )

## MOTION TO VACATE SENTENCE

**COMES NOW,** the Defendant in the above-styled action, by and through the

undersigned counsel, and respectfully requests that this Honorable Court will vacate the sentence

imposed in said action on 13 July 2005; as grounds he states as follows:

1.     On 13 July 2005, this Honorable Court imposed a sentence of twenty-two years following

     a jury verdict finding the Defendant guilty of Assault 2d Degree.

2.     At the 13 July sentencing hearing this Court, upon what was presumably a motion by the

     State, invoked the Habitual Felony Offender Act (HFOA) after finding the Defendant had

     been previously convicted of two prior felonies.

3.     No notice, whatsoever was provided to Defendant or his counsel of the State's intent to

     seek invocation of the HFOA.

4.     Describing the type of notice required before the HFOA can be invoked, the Supreme

     Court of Alabama stated in  Connolly v. State, 602 So.2d 452, 454 (Ala.1992):

**"For the HFOA to apply to a particular sentencing, the State must give reasonable
notice, prior to the sentencing hearing, of the State's intention to proceed under the HFOA.
Rule 26.6(b)(3), Ala.R.Crim.P. (Formerly Temp. Rule 6(b)(3)(ii),
Ala.R.Crim.P.)...Determination of the 'reasonableness' of the notice period is left to the
trial judge's discretion, because the trial judge is present and is familiar with the
circumstances of the case. Humber v. State, 481 So.2d 452 (Ala.Crim.App.1985). The**

**notice requirement is eliminated when during the trial the defendant admits the previous felony conviction.  Petite v. State, 520 So.2d 207 (Ala.Crim.App.1987)."**

5.    To the best of the undersigned's recollection, this Honorable Court did not specifically state the kind of notice it found to have been provided to Defendant by the State; however, to the extent that representations made at the hearing by the State's Attorney contributed to invocation of the HFOA, Defendant avers that such representations are substantially inaccurate.

6.    The State's representative, Mr. Stephen G. Smith, stated at the sentencing hearing that notice was provided to the undersigned of its intent to seek enhancement under the HFOA at a prior plea negotiation. There were no plea negotiations at which Mr. Smith was present, but rather the "negotiations" consisted of very few words exchanged between the undersigned and Mr. Kirk Adams or Mr. David Atwell.

7.    At the time of these "negotiations," there was no specific mention of the crimes which the State intended to use to enhance, much less either notice that the state would seek to use them, nor were certified copies of the conviction(s) provided either then or now.

8.    The State's representative, Mr. Smith, further averred at sentencing that a Notice of Intent to Enhance, or some kind of other notice, was filed on 11 July 2005; the case action summary in this action fails to reflect any such filing.

9.    No copy of this notice document was provided to the undersigned before, or at, the sentencing hearing.

10.    On or after 15 July 2005, the undersigned received via U.S. Mail a copy of the State's "Notification of Habitual Offender Status," a copy of which is attached to this Motion.

11.    As can be seen, the Certificate of Service on the notification certifies that it was mailed on 11 July 2005; the clerk's date stamp reads 12 July; and the envelope in which the

undersigned received the notice (a copy of which is also attached hereto) is postmarked 13 July 2005.

12.  Clearly it was and is temporally impossible for the undersigned to have received the notification prior to the sentencing hearing.

13.  In Burgin v. State, 824 So.2d 77 (Ala. Crim. App. 2001), the Court of Criminal Appeals found that the State failed to give proper notice prior to second sentencing hearing of intent to seek enhancement under Habitual Felony Offender Act (HFOA), warranting remand for new sentencing hearing, where the record failed to reflect that state gave defendant notice before hearing that state intended to proceed under HFOA and record did not indicate that state notified defendant regarding what convictions state would attempt to prove at hearing. (See also Ala. Code 1975, § 13A-5-9).

14.  To this day, Defendant has been provided with no documents whatsoever purporting to certify that Defendant has any prior conviction(s).

15. At no point in the course of this action has the Defendant either admitted any prior conviction(s), nor has he stipulated to any prior conviction(s), nor has he waived his right to notice of the State's intent to enhance his sentence.

16. The Defendant avers that because he was initially provided with notice, such as it was, of the State's intent to proceed under the HFOA a full days *after* sentencing, and further because to this day he has not been provided with certified copies of the alleged prior convictions, that such *ad hoc* notice was insufficient to invoke the Act, and concomitantly requests that this Honorable Court will

   a.  Re-sentence the Defendant under the range statutorily provided upon conviction of a Class C felony; or, in the alternative, will

b.    Schedule a hearing at which the issues raised in this Motion may be heard and

recorded.

**Respectfully submitted this the 27th day July, 2005.**

N. TRACY NICKSON (NIC026)
**ATTORNEY FOR DEFENDANT**
**2181 AA COBBS FORD ROAD**
**PRATTVILLE, ALABAMA 36066**
**(334) 285-1776**

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing document has been served upon the

offices of the Dale County District Attorney at P.O. Box 1688, Ozark, AL 36361-1688 by

placing same in his box and/or by first class U.S. Mail, postage pre-paid on this the 27th day July,

2005.

Hon. Kirke Adams
Dale County District Attorney
Hon. Stephen G. Smith
Dale County Assistant District Attorney
P.O. Box 1688
Ozark, AL 36361-1688

**OF COUNSEL**